**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

PANTECH CORPORATION and
PANTECH WIRELESS, LLC

                    Plaintiffs,

v.

GNJ MANUFACTURING INC.,

                    Defendant.

Case No.

**COMPLAINT AND JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Pantech Corporation ("Pantech Corp.") and Pantech Wireless, LLC (Pantech Wireless") (collectively, "Plaintiffs"), for this Complaint for patent infringement against Defendant GNJ Manufacturing Inc., d/b/a CellAllure ("CellAllure" or "Defendant"), allege the following:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

**THE PARTIES**

2.     Pantech Corp. is an entity organized under the laws of South Korea, with a place of business at 8, Yangjaecheon-ro 21gil, Suite 402, Seoul, 06748, Republic of Korea.

3.     Pantech Wireless is the wholly owned subsidiary of Pantech Corp. Pantech Wireless is an entity organized under the laws of Texas, with a place of business at 3000 Polar Lane, #302, Cedar Park, TX 78613.

4.      Defendant GNJ Manufacturing, Inc. is a Florida for-profit corporation with a principal place of business located at 5811 West Hallandale Beach Blvd., West Park, Florida 33023.

5.      On information and belief, CellAllure is in the business of providing information and communications technology solutions. Specifically, CellAllure provides wireless telecommunications equipment, including smart phones.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

7.      This Court has personal jurisdiction over Defendant pursuant to due process because, inter alia, (i) Plaintiffs' claims arise in whole or in part from Defendant's conduct in Florida; (ii) Defendant has a principal place of business in Florida; (iii) Defendant is incorporated in the State of Florida and has purposely availed itself of the privileges of conducting business in the State of Florida by regularly conducting and soliciting business within the State of Florida and within this district; (iv) on information and belief, Defendant has committed and continues to commit acts of patent infringement in the State of Florida, including making, using, offering to sell, and/or selling accused products in Florida, and/or importing accused products into Florida, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Florida, and/or committing a least a portion of any other infringements alleged herein.

8.      Venue is proper in this district as to Defendant pursuant to 28 U.S.C. § 1400(b) as CellAllure is incorporated in the State of Florida and has a regular and established place of business in this district of 5811 West Hallandale Beach Blvd., West Park, Florida 33023.

## ACCUSED INSTRUMENTALITIES

9.      Defendant makes, uses, sells and offers for sale, provides, and causes to be used, now and within the past six years, mobile phones and certain other WCDMA- and/or LTE-capable devices (the "Accused Instrumentalities").

10.     For example, Defendant advertises that its mobile phones, such as the Aqua, Smart One, Earn 2 CL, Cool Duo, Miracle CS, Fashion CS, Cool Extreme 2, Cool Extreme, Chic X1, Cool Pro, Bolt Mega, Cool S2, Bolt 5.5S, and Miracle 6.0S are compliant with the WCDMA and/or LTE cellular network standards.

## PATENTS-IN-SUIT

11.     The Asserted Patents are U.S. Patent Nos. 8,102,804, 6,809,641, 9,807,799, and 9,313,809.

12.     U.S. Patent No. 8,102,804 (the "'804 Patent") is entitled "Method for Transmitting and Receiving Random Access Request and Transmitting and Receiving Random Access Response." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title and interest in the '804 Patent.[1]

---

[1] The named inventors of the '804 Patent are Min Seok Noh, Yeong Hyeon Kwon, Jin Sam Kwak, Dong Cheol Kim, Sung Ho Moon, Seung Hee Han, Hyun Woo Lee, and Dragan Vujcic. The U.S. patent application was filed on December 31, 2008, published July 9, 2009, and the '804 Patent issued on January 24, 2012. In March 2009, the inventors assigned the '804 Patent application, U.S. Patent App. No. 12/347,352, to LG Electronics Inc. On February 15, 2012, LG Electronics, Inc. transferred interest in the '804 Patent to Pantech Co., Ltd. On July 6, 2016, Pantech Co. Ltd. transferred the interest to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

13. U.S. Patent No. 6,809,641 (the "'641 Patent") is entitled "Method for Disabling Alarm Temporarily in Mobile Communication Terminal." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title and interest in the '641 Patent.[2]

14. U.S. Patent No. 9,807,799 (the "'799 Patent") is entitled "Method and apparatus for terminating transmission of a message in an enhanced random access channel." On April 27, 2021, Pantech Wireless obtained full and complete ownership, title and interest in the '799 Patent.[3]

15. U.S. Patent No. 9,313,809 (the "'809 Patent") is entitled "Method and apparatus for terminating transmission of a message in an enhanced random access channel." On April 27, 2021, Pantech Wireless obtained full and complete ownership, title and interest in the '809 Patent.[4]

---

[2] The named inventors of the '641 Patent are Cham-A Choi and Hee-Jung Lee. The patent application was filed on  July 11, 2002, published on February 6, 2003, and the '641 Patent issued on October 26, 2004. On September 30, 2002, the inventors assigned their interests to SK Teletech Co., Ltd. On August 26, 2005, SK Teletech Co., Ltd. changed its name to Sky Teletech Co., Ltd. On December 2, 2005, Sky Teletech Co., Ltd. merged with and assigned its interest to Pantech Co., Ltd. On October 22, 2015, Pantech Co., Ltd. transferred the '641 Patent to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the patent to Goldpeak, and on May 7, 2020, Goldpeak transferred the '641 Patent to Pantech Corp.

[3] The named inventors of the '799 Patent are Benoit Pelletier, Diana Pani, Rocco DiGirolamo, Christopher R. Cave, Vincent Roy, Paul Marinier, and Eldad M. Zeira. The U.S. patent application was filed on June 30, 2014, published October 23, 2014, and the '799 Patent issued on October 31, 2017. On November 24, 2008, the inventors assigned the parent application, U.S. Patent App. No. 12/238,910 and any continuations thereto, including the application underlying the '799 Patent, to InterDigital Patent Holdings, Inc. On October 11, 2013, InterDigital Patent Holdings, Inc. transferred the interest to InterDigital Holdings, Inc., who transferred the interest to InterDigital, Inc., who transferred the interest to DST Holdings. Inc. On October 15, 2013, DST Holdings, Inc. transferred the interest to Signal Trust for Wireless Innovation ("Signal Trust"). On December 30, 2020, Signal Trust transferred the interest to RnB Wireless LLC ("RnB Wireless"). On April 27, 2021, RnB Wireless transferred the interest to Pantech Wireless.

[4] The named inventors of the '809 Patent are Benoit Pelletier, Diana Pani, Rocco DiGirolamo, Christopher R. Cave, Vincent Roy, Paul Marinier, and Eldad M. Zeira. The U.S. patent application was filed on June 30, 2014, published October 16, 2014, and the '809 Patent issued on April 12, 2016. On November 24, 2008, the inventors assigned the parent application, U.S. Patent App. No. 12/238,910 and any continuations thereto, including the application underlying the '809 Patent, to InterDigital Patent Holdings, Inc. On October 11, 2013, InterDigital Patent Holdings, Inc. transferred the interest to InterDigital Holdings, Inc., who transferred the interest

16.     Pantech Corp. is the rightful owner of the '804 and '641 Patents and holds the entire right, title and interest in the '804 and '641 Patents, including the right to collect for past damages.

17.     Pantech Wireless is the rightful owner of the '799 and '809 Patents and holds the entire right, title and interest in the '799 and '809 Patents, including the right to collect for past damages.

## BACKGROUND

### Pantech Corp.

18.     Pantech Co., Ltd., the predecessor in interest to what is now Pantech Corporation[5], was originally founded in 1991 in Seoul, South Korea as a competitor in the wireless phone marketplace.

19.     Throughout the 1990s and 2000s, Pantech rose to become a leading manufacturer of mobile phones. By 2012, Pantech had become the second best-selling Korean handset maker.

20.     Pantech's products were sold in South Korea, the United States, Japan, China, Europe, Vietnam, and other countries around the world. Pantech launched operations in the United States in 2003.

21.     Pantech's portfolio of intellectual property is broad and extensive, comprising thousands of worldwide patents and patent applications in the areas of telecommunications, "smart" devices, and Internet of Things products. Pantech's portfolio, in one aspect, covers

---

to InterDigital, Inc., who transferred the interest to DST Holdings. Inc. On October 15, 2013, DST Holdings, Inc. transferred the interest to Signal Trust. On December 30, 2020, Signal Trust transferred the interest to RnB Wireless. On April 27, 2021, RnB Wireless transferred the interest to Pantech Wireless.

[5] Pantech Co., Ltd. was formed in 1991, and as the result of a restructuring and acquisition in 2015 became Pantech, Inc. Thereafter, Pantech Corporation was formed. Pantech, Inc. transferred its assets to Pantech Corp. as part of an asset sale in 2020 (these three entities are hereinafter referred to collectively as "Pantech").

wireless communication systems and devices and methods for using those communication systems. In the wireless technology space alone, Pantech holds more than 200 U.S. patents and applications, many of which have been declared standard essential patents.

22. Pantech has invested heavily in research and development, investing, on average, over 10% of its annual revenue in research and development. Pantech's research and development efforts in network technology include, but are not limited to, technologies focused on LTE & 5G networks, WCDMA/CDMA, WiMAX, WiFi, Near Field Communication (NFC), Visible Light Communication, Human Body Communication, Ultra-Wideband Communication and IP Mesh Network.

23. Over the last decade, Pantech has enthusiastically contributed to the 3rd Generation Partnership Project (3GPP) LTE/LTE-A standardization by submitting proposals to TSG RAN, RAN1, and RAN2. Indeed, Pantech secured numerous LTE Standard Essential Patents and patent applications (SEPs) in connection with its contributions. In 2014, National Applied Research Labs in Taiwan reported that Pantech held 1% of LTE-related SEPs, and that number has only increased since 2014.

24. Recognizing the value of its own portfolio and its potential role in the Fourth Industrial Revolution, Pantech has committed to making its intellectual property available in the marketplace, including to competitors. On its website, under the heading "IP Umbrella Services," Pantech offers to exchange intellectual property and technology, and collaborate with competitors and patent holders, through licenses, to enable the market to identify new technological ventures.

25. Pantech Corp. is the owner by assignment of a portfolio of patents, including the Asserted Patents described in Paragraphs 12-13 and in detail in the counts below, that relate to mobile device user interface features and technology for cellular communications networks,

including variations or generations of cellular communication network technology such as, but not limited to LTE, as discussed herein.

**Pantech Wireless**

26.     InterDigital, Inc. ("InterDigital") is a wireless research and development company that has, for decades, been a pioneer in the development of fundamental wireless technologies that are at the core of mobile devices, networks, and services worldwide.  InterDigital has been one of the major contributors to worldwide mobile standards over the past 20 years.

27.     In 2013, InterDigital established Signal Trust for Wireless Innovation ("Signal Trust"). The patents and patent applications that comprise Signal Trust were developed by InterDigital, and distributions from Signal Trust were earmarked to support continued research related to cellular wireless technologies, as well as scholarly analysis of intellectual property rights and the technological, commercial, and creative innovations they facilitate.

28.     A portion of the patent portfolio created by InterDigital and transferred to Signal Trust was thereafter transferred to RnB Wireless LLC and then to Pantech Wireless.

29.     Pantech Wireless is the owner by assignment of a portfolio of patents, including the Asserted Patents described in Paragraphs 14-15 and in detail in the counts below, that relate to mobile device user interface features and technology for cellular communications networks, including variations or generations of cellular communication network technology such as, but not limited to UMTS, WCDMA, and 3G, as discussed herein.

**Negotiations Between the Parties**

30.     Cellular communication network technology is used to provide data transmission across mobile cellular networks.

31.     It is critical for cellular communication network technology to be standardized around the globe. Independent standard-setting organizations, like the European Telecommunications Standards Institute (ETSI), establish global standards for the telecommunication industries. ETSI, along with other standard-setting organizations, have made it possible to have global interoperability between networks, devices and network operators.

32.     ETSI sets forth a policy in order to balance intellectual property protections against the need for an open standard by designating certain intellectual property rights (IPR) as "essential." ETSI sets forth the following definition of "essential":

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

Clause 15.6 of the ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

33.     CellAllure is required to have a license to one or more essential patents owned by Pantech Corp. and Pantech Wireless including the Asserted Patents that are identified as essential.

34.     Pantech Corp. first sent a letter to Mr. Eric Gavara, CEO of GNJ Manufacturing, d/b/a CellAllure, on March 9, 2021, offering to license patents currently owned and/or managed by Pantech Corp., including those that are essential to cellular standards including LTE and LTE-Advanced, on fair and reasonable terms. The correspondence identified CellAllure products that were covered by claims of the offered patents, such as Bolt Mega, Chic X1, Cool Duo, Cool Extreme, Cool Pro, Cool S2, Earn, Earn 2 CL, Fashion 2 Plus, Fashion C, Miracle 6.0 S, Smart One, and Survivor, and attached a list of Pantech Corp.'s patents, including those covering CellAllure's products. No response was received from CellAllure.

35.     On July 26, 2021, Pantech Corp. and Pantech Wireless followed up with additional correspondence to CellAllure. The correspondence contained additional information regarding Pantech Corp.'s patents and also provided CellAllure notice that Pantech Wireless had acquired the Signal Trust portfolio of patents. Pantech Corp. and Pantech Wireless made CellAllure a licensing offer on fair and reasonable terms that included the Pantech Corp. and Pantech Wireless patents. Again, no response was received from CellAllure. The result is that CellAllure has continued, and continues today, to make, use, sell and offer for sale Pantech Corp.'s and Pantech Wireless's patented technology without license.

36.     As set forth above, in accordance with ETSI's policy, Plaintiffs provided CellAllure with license offers on terms that are fair, reasonable and non-discriminatory ("FRAND") for both the Pantech Corp. and Pantech Wireless patents. The United States Department of Justice, with the United States Patent and Trademark Office (USPTO) and the National Institute of Standards and Technology (NIST), have made clear that patent owners and potential licensees of essential patents should "engage in good-faith negotiations to reach F/RAND license terms" to "help reduce the costs and other burdens associated with litigation." 2019 Policy Statement on Remedies for SEPs Subject to Voluntary F/RAND Commitments, https://www.justice.gov/atr/page/file/1228016/download (December 19, 2019).

37.     Pantech Corp. and Pantech Wireless made good faith efforts to negotiate, including but not limited to providing technical details regarding the Asserted Patents and their "standards essential" nature and offering to license the Asserted Patents and other offered patents on FRAND terms. However, Defendant has not engaged in good faith discussions or negotiations with Pantech Corp. or Pantech Wireless. Indeed, Defendant has not even responded to Plaintiffs.

38.     Defendant has been operating and continue to operate without a license to Plaintiffs' standards-essential and other patents. Plaintiff's licensing efforts to-date have been unsuccessful because Defendant refuses to even acknowledge Plaintiffs' offer to conduct licensing negotiations, let alone accept Plaintiffs' fair, reasonable and non- discriminatory licensing terms.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,102,804

39.     The allegations set forth in the foregoing paragraphs 1 through 38 are incorporated into this claim for relief.

40.     On January 24, 2012 the '804 Patent, entitled "Method for Transmitting and Receiving Random Access Request and Transmitting and Receiving Random Access Response" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 12/347,352, filed on December 31, 2008.  The '804 Patent claims priority to U.S. Provisional Application No. 61/018,492, filed on January 1, 2008. A true and correct copy of the '804 Patent is attached as Exhibit 1.

41.     Pantech Corp. is the assignee and owner of all right, title and interest in and to the '804 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for its infringement.

42.     The '804 Patent discloses apparatuses and methods for a contention based random access procedure that includes a random access preamble and random access response. The '804 Patent specifies, *inter alia*, that the random access response comprises information associated with a sub-frame number of an uplink sub-frame in which the random access preamble was transmitted, and that the UE is configured to receive the random access response only during a predetermined time period that starts at a second time following the first time by an interval equal to half of a round trip time for a hybrid automatic repeat request (HARQ) process.  For example, claims 1 and

5 of the '804 Patent recites elements of a random access procedure mandated by the LTE standard, including at least 3GPP TS 36.321, TS 36.300, TS 36.331, and TS 36.211.

43.     Upon information and belief, Defendant has and continues to directly infringe at least claims 1 and 5 of the '804 Patent by making, using, selling, importing, offering to sell within the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 1 and 5 of the '804 Patent (the "CellAllure Accused '804 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 1 and 5 by practicing claims 1 and 5 through the CellAllure Accused '804 Instrumentalities, and by causing the CellAllure Accused '804 Instrumentalities to practice the patented inventions.

44.     CellAllure Accused '804 Instrumentalities include, for example, the Bolt Mega, and other LTE-compatible products that support the LTE contention based random access procedure. On information and belief, each of the CellAllure Accused '804 Instrumentalities incorporates at least one processor configured to comply with LTE and to support the LTE contention based random access procedure.

45.     Defendant was made aware of the '804 Patent and its infringement thereof at least as early as the filing of this Complaint.

46.     Since at least as early as the filing of this Complaint, Defendant's infringement will have been, and continue to be willful.

47.     Upon information and belief, the CellAllure Accused '804 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

48.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 1 and 5 of the '804 Patent under 35 U.S.C. § 271(b) by, among other

things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the CellAllure Accused '804 Instrumentalities constitute direct infringement of at least one claim of the '804 Patent.

49.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the CellAllure Accused '804 Instrumentalities, and providing instruction materials, training and services regarding the CellAllure Accused '804 Instrumentalities.

50.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the CellAllure Accused '804 Instrumentalities necessarily infringes the '804 Patent because the inventions of the '804 Patent are required to comply with the relevant cellular standards. Defendant advertises its CellAllure Accused '804 Instrumentalities as compliant with LTE, which induces others to infringe the '804 Patent. Defendant has knowingly induced infringement since at least as early as the filing of this Complaint.

51.     Upon information and belief, Defendant is liable as a contributory infringer of the '804 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the CellAllure Accused '804 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '804 Patent. Each of the CellAllure Accused '804 Instrumentalities is a material component for use in practicing the '804 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the CellAllure Accused '804 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

52.     Pantech Corp. has been harmed by Defendant's infringing activities.

<u>COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,809,641</u>

53.     The allegations set forth in the foregoing paragraphs 1 through 52 are incorporated into this claim for relief.

54.     On Oct. 26, 2004, U.S. Patent No. 6,809,641, "Method For Disabling Alarm Temporarily In Mobile Communication Terminal" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 10/194,038, filed on July 11, 2002. The '641 Patent claims foreign priority to KR 10-2001-41909, filed on July 12, 2001. A true and correct copy of the '641 Patent is attached as Exhibit 2.

55.     Pantech Corp. is the assignee and owner of all right, title and interest in and to the '641 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

56.     The '641 Patent discloses a method for disabling temporarily a preset alarm in a mobile communication terminal for one day, periodically, or on a designated date.

57.     Upon information and belief, Defendant has and continues to directly infringe at least claim 1 of the '641 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claim 1 of the '641 Patent (the "CellAllure Accused '641 Instrumentalities"). Defendant also has and continues to directly infringe at least claim 1 by practicing claim 1 through the CellAllure Accused '641 Instrumentalities, and by causing the CellAllure Accused '641 Instrumentalities to practice the patented inventions.

58.     For example, temporarily disabling a preset alarm in each of the CellAllure Accused '641 Instrumentalities includes a first step of determining whether a temporal disabling menu button (*e.g.*, button annotated in green block below showing Mon-Fri preselected) has been pushed by a user while the CellAllure Accused '641 Instrumentality (*e.g.*, Chic X2) is in receive

wait mode; a second step of displaying temporal disabling menu items (*e.g.*, individual round buttons indicating days of the week such as Monday, Tuesday, etc. on the next screen) upon push of said temporal disabling menu button by said user; and a third step of temporarily disabling alarms of the date designated by the corresponding menu item upon selection of a temporal disabling menu item by said user.



| Monday-Friday preselected | User chooses to further disable Tuesdays and Fridays | Tuesdays and Thursdays successfully disabled |
| --- | --- | --- |
| **Annotated Screenshots of Chic X2** | | |

59.     Defendant was made aware of the '641 Patent and its infringement thereof at least as early as the correspondence sent from Pantech Corp. on March 9, 2021, as discussed above.

60.     Since at least as March 9, 2021, Defendant's infringement will have been, and continue to be willful.

61.     Upon information and belief, the CellAllure Accused '641 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

62.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claim 1 of the '641 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the CellAllure Accused '641 Instrumentalities constitute direct infringement of at least claim 1 of the '641 Patent.

63.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the CellAllure Accused '641 Instrumentalities, and providing instruction materials, training and services regarding the CellAllure Accused '641 Instrumentalities.

64.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the preset alarm disabling function of the CellAllure Accused '641 Instrumentalities infringes the '641 Patent. Defendant has knowingly induced infringement since at least March 9, 2021, when Defendant was first made aware of the '641 Patent, as discussed above.

65.     Upon information and belief, Defendant is liable as a contributory infringer of the '641 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the CellAllure Accused '641 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '641 Patent. Each of the CellAllure Accused '641 Instrumentalities is a material component for use in practicing the '641 Patent and

is specifically made and not a staple article of commerce suitable for substantial non-infringing use.

66.     Pantech Corp. has been harmed by Defendant's infringing activities.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,807,799**

67.     The allegations set forth in the foregoing paragraphs 1 through 66 are incorporated into this claim for relief.

68.     On October 31, 2017, the '799 Patent, entitled "Method and Apparatus for Terminating Transmission of a Message in an Enhanced Random Access Channel," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 14/319,975, filed on June 30, 2014. The '799 Patent claims priority to at least provisional application No. 60/975,985, filed on September 28, 2007. A true742005591 and correct copy of the '799 Patent is attached as Exhibit 3.

69.     Pantech Wireless is the assignee and owner of all right, title and interest in and to the '799 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

70.     The '799 Patent discloses at least a method and an apparatus for terminating an enhanced random access channel (E-RACH) message in an E-RACH transmission. For example, the '799 Patent discloses a method for user equipment (UE) to perform physical random access procedure for an Enhanced Uplink. For example, the UE transmits a preamble to request allocation of resources for transmission by the network. In response to the transmitted preamble, the UE receives acquisition indicator from the network indicating the resources have been allocated for the UE for Enhanced Dedicated Channel (E-DCH) transmission. The UE is also configured to transmit scheduling information to indicate to the serving E-DCH node the amount of resources required for transmission. The scheduling information contains a TEBS (total E-DCH buffer

status) field which indicates the total amount of data available for transmission and retransmission. As set forth in TS 25.321 section 11.8.1.6, the reporting of scheduling information is triggered when TEBS becomes 0 and the last data is being transmitted. In particular, the transmission of scheduling information is triggered when the TEBS remains zero and no higher layer data remains in MAC to be transmitted for a period during which E-DCH transmission continuation back off period is unequal to "infinity." As set forth in section 11.8.1.9 of TS 25.321, the UE is configured to release the common E-DCH resource when E-DCH transmission continuation back off is not set to "infinity," the empty buffer status (TEBS=0) has been reported, and no MAC PDU is left in a HARQ process for transmission or retransmission. Compliance with 3GPP TS 25.211, TS 25.214, and TS 25.321, as required by at least the UMTS, WCDMA or 3G cellular standards, requires the use of the inventions recited in at least claims 29-33 of the '799 Patent, including the functionality described in this paragraph

71.     Upon information and belief, Defendant has and continues to directly infringe at least claims 29-33 of the '799 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 29-33 of the '799 Patent (the "CellAllure Accused '799 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 29-33 by practicing claims 29-33 through the CellAllure Accused '799 Instrumentalities, and by causing the CellAllure Accused '799 Instrumentalities to practice the patented inventions.

72.     CellAllure Accused '799 Instrumentalities include, for example, Cool Pro, and other UMTS/WCDMA-compatible products that support the request and receipt of enhanced uplink resources from a wireless network in compliance with 3GPP TS 25.211, TS 25.214, and TS 25.321. On information and belief, each of the CellAllure Accused '799 Instrumentalities

incorporates at least one processor configured to comply with one or more of UMTS, WCDMA, and 3G cellular communication protocols.

73.     CellAllure Accused '799 Instrumentalities incorporate a chipset, application processor, SoC, or system-on-chip that, on information and belief, complies with one or more of UMTS, WCDMA, and 3G cellular communication protocols including at least 3GPP TS 25.211, TS 25.214, and TS 25.321.

74.     Defendant was made aware of the '799 Patent and its infringement thereof at least as early as the correspondence sent on behalf of Pantech Corp. and Pantech Wireless on July 26, 2021, as discussed above.

75.     Since at least as early as July 26, 2021, Defendant's infringement will have been, and continue to be willful.

76.     Upon information and belief, the CellAllure Accused '799 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

77.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 29-33 of the '799 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the CellAllure Accused '799 Instrumentalities constitute direct infringement of at least one claim of the '799 Patent.

78.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the

CellAllure Accused '799 Instrumentalities, and providing instruction materials, training and services regarding the CellAllure Accused '799 Instrumentalities.

79.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the CellAllure Accused '799 Instrumentalities necessarily infringes the '799 Patent because the inventions of the '799 Patent are required to comply with the UMTS, WCDMA or 3G cellular standards (including at least 3GPP TS 25.211, TS 25.214, and TS 25.321). Defendant advertises its CellAllure Accused '799 Instrumentalities as compliant with UMTS, WCDMA, or 3G, which induces others to infringe the '799 Patent. Defendant has knowingly induced infringement since at least as early as July 26, 2021, when Defendant was made aware of the '799 Patent.

80.     Upon information and belief, Defendant is liable as a contributory infringer of the '799 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the CellAllure Accused '799 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '799 Patent. Each of the CellAllure Accused '799 Instrumentalities is a material component for use in practicing the '799 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the CellAllure Accused '799 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

81.     Pantech Wireless has been harmed by Defendant's infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,313,809**

82.     The allegations set forth in the foregoing paragraphs 1 through 81 are incorporated into this claim for relief.

83.     On April 12, 2016, the '809 Patent, entitled "Method and Apparatus for Terminating Transmission of a Message in an Enhanced Random Access Channel" was duly and

legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 14/319,608, filed on June 30, 2014. The '809 Patent claims priority to at least provisional application No. 60/975,985, filed on September 28, 2007. A true and correct copy of the '809 Patent is attached as Exhibit 4.

84.     Pantech Wireless is the assignee and owner of all right, title and interest in and to the '809 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

85.     The '809 Patent discloses at least a method and an apparatus for terminating an enhanced random access channel (E-RACH) message in an E-RACH transmission. For example, the '809 Patent discloses a method to be performed by a user equipment (UE) for requesting and receiving enhanced uplink resource from a wireless network. For example, the UE is configured with MAC entity that manages FACH (forward access channel) communications between the UE and the network. The UE determines and reports the total E-DCH buffer status (TEBS). For example, the TEBS value can be 0 indicating that the buffer is empty. The buffer indicates the total amount of data available for transmission. The UE uses the condition of TEBSS being zero as a trigger for transmitting scheduling information to the network. In addition, the UE (e.g. WTRU) is configured to transmit scheduling information to indicate to the serving E-DCH node the amount of resources required for transmission. The scheduling information contains a TEBS (total E-DCH buffer status) field which indicates the total amount of data available for transmission and retransmission. As set forth in TS 25.321 section 11.8.1.6, the reporting of scheduling information is triggered when TEBS becomes 0 and the last data is being transmitted. As set forth in section 11.8.1.9 of TS 25.321, the UE is configured to release the common E-DCH resource when no MAC PDU is left in a HARQ process for transmission or retransmission. As set forth in section

11.8.1.9 of TS 25.321, the UE is configured to release the common E-DCH resource when the empty buffer status (TEBS=0) has been reported, and no MAC PDU is left in a HARQ process for transmission or retransmission. Compliance with 3GPP TS 25.211, TS 25.214, and TS 25.321, as required by at least the UMTS, WCDMA, or 3G cellular standards, requires the use of the inventions recited in at least claims 1-5 of the '809 Patent, including the functionality described in this paragraph.

86.     Upon information and belief, Defendant has and continues to directly infringe at least claims 1-5 of the '809 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 1-5 of the '809 Patent (the "CellAllure Accused '809 Instrumentalities"). Defendant also has and continues to directly infringe at least claims 1-5 by practicing claims 1-5 through the CellAllure Accused '809 Instrumentalities, and by causing the CellAllure Accused '809 Instrumentalities to practice the patented inventions.

87.     CellAllure Accused '809 Instrumentalities include, for example, the Cool Pro, and other UMTS/WCDMA-compatible products that support the request and receipt of enhanced uplink resources from a wireless network in compliance with 3GPP TS 25.211, TS 25.214, and TS 25.321. On information and belief, each of the CellAllure Accused '809 Instrumentalities incorporates at least one processor configured to comply with one or more of UMTS, WCDMA, and 3G cellular communication protocols.

88.     Certain exemplary CellAllure Accused '809 Instrumentalities incorporate a chipset, application processor, SoC, or system-on-chip that, on information and belief, complies with one or more of UMTS, WCDMA, and 3G cellular communication protocols including at least 3GPP TS 25.211, TS 25.214 and TS 25.321.

89.     Defendant was made aware of the '809 Patent and its infringement thereof at least as early as the correspondence sent on behalf of Pantech Corp. and Pantech Wireless on July 26, 2021, as discussed above.

90.     Since at least July 26, 2021, Defendant's infringement will have been, and continue to be willful.

91.     Upon information and belief, the CellAllure Accused '809 Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers/subscribers and end users across the country and in this district.

92.     Upon information and belief, Defendant has induced and continues to induce others to infringe at least claims 1-5 of the '809 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers/subscribers, and end users, whose use of the CellAllure Accused '809 Instrumentalities constitute direct infringement of at least one .claim of the '809 Patent.

93.     In particular, Defendant's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the CellAllure Accused '809 Instrumentalities, and providing instruction materials, training and services regarding the CellAllure Accused '809 Instrumentalities.

94.     Any party, including Defendant's partners, clients, customers/subscribers, and end users, using the CellAllure Accused '809 Instrumentalities necessarily infringes the '809 Patent because the inventions of the '809 Patent are required to comply with the UMTS, WCDMA or 3G cellular standards (including at least 3GPP TS 25.211, TS 25.214, and TS 25.321). Defendant advertises its CellAllure Accused '809 Instrumentalities as compliant with UMTS, WCDMA, or

3G, which induces others to infringe the '809 Patent. Defendant has knowingly induced infringement since at least as early as July 26, 2021, when Defendant was made aware of the '809 Patent.

95.     Upon information and belief, Defendant is liable as a contributory infringer of the '809 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the CellAllure Accused '809 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '809 Patent. Each of the CellAllure Accused '809 Instrumentalities is a material component for use in practicing the '809 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the CellAllure Accused '809 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

96.     Pantech Wireless has been harmed by Defendant's infringing activities.

## DAMAGES

As a result of Defendant's acts of infringement, Plaintiffs have suffered actual and consequential damages.  To the fullest extent permitted by law, Plaintiffs seek recovery of damages at least in the form of reasonable royalties.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for itself and against Defendant as follows:

A.  An adjudication that Defendant has infringed U.S. Patent Nos. U.S. Patent Nos. 8,102,804, 6,809,641, 9,807,799, and 9,313,809;

B.  An award of damages to be paid by Defendant adequate to compensate Plaintiffs for Defendant's past infringement of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.  A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiffs' reasonable attorneys' fees; and

D.  An award to Plaintiffs of such further relief at law or in equity as the Court deems just and proper.

Dated: December 8, 2021                          Respectfully submitted,

                                                 */s/ Marcos Daniel Jiménez*
                                                 Marcos Daniel Jiménez
                                                   Florida Bar No. 441503
                                                 Marcos D. Jiménez, P.A.
                                                 255 Alhambra Circle, 8th Floor
                                                 Miami, Florida 33134
                                                 Tel: 305.740.1975
                                                 Email: mdj@mdjlegal.com
                                                 Email: lois@leoncosgrove.com

                                                 *Counsel for Plaintiffs Pantech Corporation and Pantech Wireless, LLC*


                                                 *Of counsel:*

                                                 James A. Fussell, III*
                                                 Jamie B. Beaber*
                                                 MAYER BROWN LLP
                                                 1999 K Street, N.W.
                                                 Washington D.C. 20006
                                                 (202) 263-3000
                                                 jbeaber@mayerbrown.com
                                                 jfussell@mayerbrown.com
                                                 (* *pro hac vice* application to be filed)

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

/s/ Marcos Daniel Jiménez
Marcos Daniel Jiménez